**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jerome G Overstreet, | No. CV-23-00248-PHX-ROS |
| Plaintiff, | **ORDER** |
| v. | |
| Living Spaces Furniture LLC, | |
| Defendant. | |

Defendant Living Spaces Furniture believes Plaintiff Jerome Overstreet filed this employment discrimination suit after the statute of limitations expired.  Living Spaces supports its argument with documents obtained from the EEOC.  Overstreet does not argue those documents are inaccurate, but he does argue the Court should not consider the documents at this stage of the case.  The documents may be considered, they establish Overstreet's claim is untimely, and the current complaint will be dismissed.  Overstreet will be given the opportunity to file an amended complaint alleging facts, if they are available, regarding equitable tolling.

## BACKGROUND

The following facts are taken from Overstreet's complaint as well as documents Living Spaces obtained from the EEOC.  Overstreet's argument that the EEOC documents cannot be considered will be addressed later.  Crucially, Overstreet does not allege in his complaint or argue in his papers that any of the following facts are incorrect.

On April 2, 2014, Overstreet started working for Living Spaces in a managerial

position.  Overstreet, who is African American, alleges he was treated differently than his white coworkers from the beginning of his employment.  On July 18, 2014, Overstreet filed a Charge of Discrimination with the EEOC.  That charge will be referred to as the "First Charge."  (Doc. 13-1 at 42).  The First Charge alleged, among other things, that Overstreet had received different training than a white coworker, was paid less than his white coworkers, and was often "subjected to additional duties and longer work hours that white managers [were] not assigned."  (Doc. 13-1 at 42).  Overstreet continued to work at Living Spaces after submitting the First Charge until he was terminated on August 12, 2014.

On August 27, 2014, Overstreet filed a second Charge of Discrimination with the EEOC.  That charge will be referred to as the "Second Charge."  The Second Charge alleged Overstreet's termination was "due to [his] race and in retaliation" for filing the First Charge.  (Doc. 13-1 at 59).  Thus, as of late August 2014, Overstreet had two charges pending with the EEOC.

On September 16, 2016, the EEOC sent Overstreet a letter stating it had concluded its investigation into the First Charge and was unable to determine any violation of employment laws had occurred.  The letter was accompanied by a Right to Sue notice, explaining Overstreet had 90 days to file a lawsuit if he wished to pursue the matter further.  (Doc. 13-1 at 46).  After receiving the letter and notice, Overstreet had a phone conversation with an EEOC employee.  During that call Overstreet complained the EEOC had not contacted the appropriate witnesses.  (Doc. 13-1 at 48).  It is unclear if anything occurred as result of that conversation.  On December 15, 2016, Overstreet sent an email to the EEOC complaining the First Charge had not been handled appropriately.  (Doc. 13-1 at 53).  On December 28, 2016, the EEOC responded via letter, reiterating that its investigation had not discovered sufficient evidence to support Overstreet's "allegations of employment discrimination."  (Doc. 13-1 at 55).  Overstreet did not file a lawsuit based on the First Charge.

On July 9, 2021, the EEOC drafted various documents stating an investigation into Overstreet's Second Charge had been conducted but the investigation had not uncovered

1   any violation of employment laws.  (Doc. 13-1 at 65).  One of the documents stated

2   Overstreet would need to file suit within 90 days of receipt of the documents if he wished

3   to do so.  That document also stated "[t]he 90-day period for filing a private lawsuit cannot

4   be waived, extended, or restored by the EEOC."  (Doc. 13-1 at 68).

5   The July 9 documents were not sent to Overstreet via regular mail.  Instead, the

6   EEOC sent Overstreet an email, informing him the EEOC had made a decision on the

7   Second Charge and inviting Overstreet to download a copy of the July 9 documents from

8   an EEOC website.  (Doc. 13-1 at 68).  On July 30, 2021, the EEOC sent Overstreet a letter

9   via regular mail stating the EEOC's records indicated he had not downloaded the July 9

10  documents from the website.  Thus, the July 30 letter included copies of the July 9

11  documents.  It is not clear if Overstreet received the EEOC's email in early July 2021.  It

12  is presently undisputed, however, that Overstreet received the mailed documents regarding

13  his Second Charge on August 4, 2021.

14  On October 26, 2021, Overstreet sent a letter to the EEOC requesting the

15  investigation into the Second Charge be reopened.  (Doc. 13-1 at 71).  That letter stated

16  Overstreet received the EEOC's decision on August 4 and Overstreet complained the

17  investigation had been "incomplete and not thorough."  (Doc. 13-1 at 71).  The next day,

18  the EEOC responded via email stating Overstreet's "request for reconsideration [had] been

19  forwarded to the District Director for review."  (Doc. 13-1 at 74).  That email cautioned

20  Overstreet "the time period referenced in the Notice of Right to Sue to file a lawsuit does

21  not stop during the Director's review process."  On November 4, 2021, the District Director

22  sent a letter to Overstreet stating the Second Charge had been "re-opened."  (Doc. 13-1 at

23  76).  That letter also stated, however, the Right to Sue notice issued on July 9, 2021 was

24  "rescinded . . . unless [Overstreet had] filed suit [or] the 90-day suit period [had] expired."

25  (Doc. 13-1 at 76) (emphasis in original).

26  Despite being told that reopening the Second Charge was ineffective if the 90-day

27  period had expired, Overstreet did not file suit at that time.  Instead, he waited for further

28  communications from the EEOC.  On July 7, 2022, the EEOC issued a "Determination"

on the Second Charge.   According to that document, the EEOC believed there was "reasonable cause to believe [Living Spaces] violated Title VII, when it discharged [Overstreet] in retaliation for filing a Charge of Discrimination." (Doc. 13-1 at 78).  On November 14, 2022, the EEOC informed Overstreet it had been unable to obtain a settlement with Living Spaces and provided him a Right to Sue notice.  That notice stated Overstreet needed to file a lawsuit based on the Second Charge within 90 days.  Strangely, the notice did not mention the previous communications indicating Overstreet might no longer be able to file suit.  Overstreet filed the present suit on February 7, 2023, within 90 days of the November 14 Right to Sue notice.

Based on the above facts, any claims based on the First Charge would be time-barred.  Living Spaces interpreted Overstreet's complaint as attempting to base his suit on events connected to the First Charge.  Overstreet is adamant, however, that he is not seeking to pursue any claims based on the First Charge.  For present purposes, the Court will assume that is true.  Thus, the sole dispute is whether Overstreet filed this suit within 90 days of receiving a valid Right to Sue notice regarding the Second Charge.  Overstreet received the initial Right to Sue notice on the Second Charge on August 4, 2021.[1]  Overstreet then asked the EEOC to reopen its investigation, which the EEOC did on November 4, 2021.  But the period between August 4, 2021, and November 4, 2021, is more than 90 days.  Thus, the EEOC's decision to reopen its investigation came after the 90-day limitations period expired.

Living Spaces responded to Overstreet's complaint by filing a motion to dismiss as well as a request the Court take judicial notice of documents obtained from the EEOC.  Living Spaces argues those documents establish Overstreet waited too long to file this suit.

---

[1] It is possible the email to Overstreet on July 9, 2021, began the 90-day limitations period and not the letter received by regular mail on August 4.  *See, e.g.*, *Paniconi v. Abington Hosp.-Jefferson Health*, 604 F. Supp. 3d 290, 293 (E.D. Pa. 2022) ("The ninety-day period began to run when the email notification reached Plaintiff's attorney's inbox.).  If the limitations period should be measured from the email, the period expired almost a month before November 4, 2021.  Because Overstreet's suit is untimely even using the date of August 4, 2021, the Court need not address the efficacy of the email notification.

1    Overstreet responds that it would be improper to consider the EEOC documents and,

2    therefore, the Court must accept his allegations that this suit was filed within 90 days of

3    receiving the Right to Sue notice in November 2022.

ANALYSIS

### I.    Court May Consider EEOC Documents

6    Living Spaces filed its motion to dismiss under Federal Rule of Civil Procedure

7    12(b)(6).  In support of that motion Living Spaces requested the Court either take judicial

8    notice of documents obtained from the EEOC or deem those documents incorporated by

9    reference into the complaint.  Overstreet concedes the Court is entitled to consider a small

10   subset of the EEOC documents but he argues the Court should not consider all of the

11   documents.

12   Normally, when resolving a 12(b)(6) motion a court may not consider "any material

13   beyond the pleadings." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  But

14   Living Spaces invokes the "two exceptions" to this rule.  *Id.*  First, Living Spaces argues

15   the EEOC documents are incorporated by reference into the complaint.  *See, e.g.*, *Northstar*

16   *Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1043 (9th Cir. 2015).  Second, Living

17   Spaces argues the Court may take judicial notice of the EEOC documents.  The simpler

18   path is to take judicial notice of crucial portions of the EEOC documents.

19   As relevant here, Federal Rule of Evidence 201 allows a court to take judicial notice

20   of facts that are "not subject to reasonable dispute" because they "can be accurately and

21   readily determined from sources whose accuracy cannot reasonably be questioned."  Under

22   this rule, "[j]udicial notice is appropriate for records and reports of administrative bodies."

23   *United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th

24   Cir. 2008).  However, "[j]ust because [a] document itself is susceptible to judicial notice

25   does not mean that every assertion of fact within that document is judicially noticeable for

26   its truth."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).  Thus,

27   when taking judicial notice of documents, a court should "identify . . . which fact or facts

28   it is noticing from" the documents.  *Id.*

District courts in the Ninth Circuit routinely take judicial notice of portions of documents from the EEOC. *See, e.g.*, *Reed v. Cognizant Tech. Sols.*, 2020 WL 3268691, at *1 n.1 (D. Ariz. June 16, 2020) (taking judicial notice of "EEOC complaint and the right-to-sue letter"); *Mazzorana v. Emergency Physicians Med. Grp., Inc.*, 2013 WL 4040791, at *5 (D. Nev. Aug. 6, 2013) (taking judicial notice of EEOC charge). Here, Living Spaces asks the Court to take judicial notice of documents from the EEOC, but Living Spaces' argument requires judicial notice only of the dates shown on those documents. Overstreet argues it would be improper to take judicial notice even of the dates of those documents, but his arguments are not convincing.

Overstreet agrees the Court is entitled to consider, either through judicial notice or incorporation by reference, some of the EEOC documents. In particular, Overstreet concedes the Court may consider the First and Second Charges filed with the EEOC as well as the "Notice of Right to Sue" regarding the Second Charge dated November 14, 2022. (Doc. 20). Conveniently for Overstreet, these are the EEOC documents necessary to establish he may have exhausted his administrative remedies before filing this suit and to establish this suit, measured from the Right to Sue notice dated November 14, 2022, was timely filed. However, Overstreet does not offer any plausible reason to believe the Court should consider only the few EEOC documents that would allow this suit to proceed while turning a blind eye to any portion of the EEOC documents that might prevent the suit from proceeding.

Much of Overstreet's argument for not considering any aspect of the EEOC documents is the documents allegedly lack "proper foundation and authentication." The EEOC documents were obtained by defense counsel directly from the EEOC and defense counsel has filed a declaration to that effect. Thus, it is not clear what "foundation and authentication" concerns Overstreet has in mind. Overstreet does not allege in his complaint or argue in his opposition that any portion of the EEOC documents are fabricated or altered. In fact, it would make little sense for Living Spaces to fabricate or alter the documents because Overstreet has copies of the documents in his own possession. Thus,

1  Overstreet's evidentiary objections appear to be attempts merely to prevent consideration
2  of indisputable facts.

3       The Ninth Circuit allows courts to take judicial notice of certain facts contained in
4  agency records.  *United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547
5  F.3d 943, 955 (9th Cir. 2008).  Here, the Court will take judicial notice only of the dates
6  reflected in the EEOC documents.  In particular, the date Overstreet received the initial
7  Right to Sue notice regarding the Second Charge (August 4, 2021) and the date the EEOC
8  attempted to rescind that Right to Sue Notice (November 4, 2021).

9       **II.    Overstreet's Suit is Untimely**

10      Based on the dates reflected on certain EEOC documents, Overstreet did not file
11 this suit within the 90-day limitations period.  That period expired before the EEOC
12 attempted to rescind the initial Right to Sue notice received on August 4.[2]  Thus, this suit
13 is untimely and must be dismissed.  *See Scholar v. Pac. Bell*, 963 F.2d 264, 267 (9th Cir.
14 1992) (holding failure by Title VII plaintiff "to file within 90–day period" means "the
15 action is barred").

16      Overstreet makes a final attempt to avoid dismissal by claiming he may be entitled
17 to equitable tolling of the limitations period.  According to Overstreet, he cannot make his
18 full equitable tolling argument until he pursues some discovery.  In particular, Overstreet
19 argues he needs discovery to determine why the EEOC informed him on November 14,
20 2022, that he had 90 days to file suit.  (Doc. 19 at 8).  Overstreet believes discovering the
21 "reason for the misinformation in the November 14, 2022, Notice of Right to Sue" might
22 provide a valid basis for equitable tolling.  This argument, however, does not address the
23 relevant time period.

24      Equitable tolling of the 90-day limitations period is available in very limited
25 circumstances.  In general, equitable tolling is not available "when a late filing is due to
26 claimant's failure to exercise due diligence in preserving his legal rights."  *Scholar v. Pac.*

27 _____
   [2] The parties appear to agree that, under Ninth Circuit authority, the EEOC cannot rescind
28 a right to sue notice issued more than 90 days prior to the attempted rescission.  *See Lute v. Singer Co.*, 678 F.2d 844, 846 (9th Cir. 1982).  The Court will assume that is accurate for purposes of this Order.

*Bell*, 963 F.2d 264, 268 (9th Cir. 1992).  And, in general, "[e]vents or actions occurring after the expiration of the limitations period cannot serve to extend that period or excuse [a plaintiff's] failure to comply with the limitations period."  *Doan v. NSK Corp.*, 266 F. Supp. 2d 629, 638 (E.D. Mich. 2003).  *See also Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) (holding statute of limitations in habeas context cannot be reinitiated once it has expired).

In the present case, the relevant dates are undisputed.  Overstreet received the initial Right to Sue notice for his Second Charge on August 4, 2021.  That meant Overstreet had until November 2, 2021, to file suit.  It is true Overstreet asked the EEOC to reopen the investigation during that 90-day period.  But in response to that request, the EEOC explicitly informed Overstreet "the time period referenced in the Notice of Right to Sue to file a lawsuit does not stop" while the request to reopen was considered.  The 90-day limitations period expired on November 2, 2021, without the EEOC acting on the request to reopen and without Overstreet filing suit.  It was not until two days after expiration, on November 4, 2021, that the EEOC purported to rescind its earlier Right to Sue notice. However, the letter attempting to rescind the earlier Right to Sue notice informed Overstreet the rescission was not effective if "the 90-day suit period [had] expired."  (Doc. 13-1 at 76).

Overstreet has not alleged any facts establishing he was pursuing his rights diligently between August 4 and November 2, 2021.  Instead, Overstreet argues he needs to pursue discovery to determine what the EEOC meant in the November 14, 2022, communication.  Overstreet does not explain how that communication, more than a year after the limitations period expired, could be a valid basis for equitably tolling the deadline that expired a year earlier.  And the cases cited by Overstreet allegedly supporting his position show equitable tolling is applied only when there are relevant events prior to the expiration of the limitations period.

Overstreet cites *Uchikura v. Willis Towers Watson Call Center*, 2023 WL 3792744, at *9 (D. Ariz. June 2, 2023), as establishing that being misled by the EEOC may be

sufficient to establish equitable tolling.  That is correct.  But the allegedly misleading conduct by the EEOC in that case occurred during the initial intake interview.  *Id.* at *2. That is, the conduct that may have prevented the plaintiff from pursuing his claims in a timely manner occurred prior to the statute of limitations expiring.  In such circumstances, there is at least an argument that the plaintiff relied on the EEOC's communications to his detriment.

Overstreet also cites *Bernstein v. Maximus Federal Services, Inc.*, 63 F.4th 967 (5th Cir. 2023).  There the EEOC issued a first right to sue notice on April 12, 2021, and a second right to sue notice on June 3, 2021.  *Id.* at 968.  The plaintiff did not file suit until 89 days after receiving the second notice.  The second notice, however, was received during the 90-day period that began with the first notice.  Thus, as was the situation in *Uchikura*, the misleading communication allegedly supporting equitable tolling occurred before the limitations period expired.  The Fifth Circuit in *Bernstein* merely held it was possible the plaintiff's failure to file suit within 90 days of the first notice was because the plaintiff had relied on the second right to sue notice.  *See also Page v. U.S. Indus., Inc.*, 556 F.2d 346, 355 (5th Cir. 1977) (discussing misleading letter from EEOC that started 90-day period).

In the current case, the only factual basis Overstreet offers for his equitable tolling argument is a document received one year after the limitations period expired.  Under the generally accepted linear nature of time, the allegedly misleading communication in 2022 could not have effected Overstreet's behavior in 2021.  Overstreet has not alleged or identified any misleading conduct by the EEOC before the limitations period expired.  Nor has Overstreet alleged or identified any other extraordinary circumstances in 2021 that prevented him from filing suit before expiration of the limitations period.  Thus, there is no present basis to apply equitable tolling.

Overstreet seeks leave to amend in the event the Court considers the EEOC documents but does not find a basis for equitable tolling.  (Doc. 19 at 8).  Overstreet will be allowed to do so.  However, Overstreet should amend only if he can allege, in good faith, facts providing a plausible basis for equitable tolling.  Those facts must, at the very

least, address Overstreet's behavior between July 9, 2021, and November 4, 2021, the first date Overstreet might have relied on a misleading statement from the EEOC that his earlier Right to Sue notice had been rescinded.

Accordingly,

**IT IS ORDERED** the Motion to Dismiss (Doc. 12) is **GRANTED**.  The complaint is **DISMISSED WITH LEAVE TO AMEND**.

**IT IS FURTHER ORDERED** no later than **July 28, 2023**, Plaintiff shall file an amended complaint alleging facts regarding equitable tolling.  The Clerk of Court is directed to enter a judgment of dismissal with prejudice in the event no amended complaint is filed by that date.

**IT IS FURTHER ORDERED** the Request for Judicial Notice (Doc. 13) is **GRANTED IN PART** as set forth above.

Dated this 7th day of July, 2023.

Honorable Roslyn O. Silver
Senior United States District Judge